# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

SCOTTSDALE INSURANCE COMPANY,　　　　　　　　PLAINTIFF,

VS.　　　　　　　　　　　　　　　　CIVIL ACTION NO. 4:04CV376-P-B

BUNGEE RACERS, INC.,
DOYLE MOSLEY, JIMMY MOSLEY,
and ADVENTURELAND, INC.,　　　　　　　　　　DEFENDANTS.

## MEMORANDUM OPINION

These matters come before the court upon Scottsdale Insurance Company's Motion for Summary Judgment [30-1] and Bungee Racers, Inc., Doyle Mosley, and Jimmy Mosley's Motion for Summary Judgment [34-1]. After due consideration of the motions and the responses filed thereto, the court is prepared to rule.

### I. FACTUAL BACKGROUND

On November 9, 2000 Adventureland, an amusement park in Alabama, signed a contract to purchase a ride called the Extreme Bungee Racer 400 from Bungee Racers, Inc. of Mississippi. Two years later, on November 7, 2002, Adventureland filed suit against Bungee Racers, Inc. in the Circuit Court of Houston County, Alabama alleging there were so many defects in the ride that Adventureland had to shut it down. In the Alabama lawsuit, Adventureland alleged the following causes of action: (1) breach of contract; (2) breach of express warranties; (3) fraud; (4) and negligent

1

misrepresentation. The damages allegedly incurred as a result of all four counts included "extensive financial losses including loss of the value of its purchase, additional construction costs, lost revenue, increased labor hours for maintenance and operators, cost of financing the loan, repair bills, lost advertising expense, and demolition expenses." *Adventureland, Inc. v. Bungee Racers, Inc., et al.,* Case Number CV02-811A in the Circuit Court of Houston County, Alabama, Complaint, ¶¶ 15, 19, 24, 29. Furthermore, in their claim for negligent misrepresentation, Adventureland averred that they "incur[red] additional expenses for site preparation, advertising, signage, etc." *Id*. at. ¶ 28.

Bungee Racers had a general commercial liability policy with Scottsdale Insurance Company in effect when Adventureland filed suit. On November 22, 2002, approximately three weeks after Adventureland filed their Complaint, Scottsdale sent a reservation of rights letter to Bungee Racers. In the letter, Scottsdale wrote that "[b]ecause there is an allegation of 'property damage,' we will defend you in this action based on this reservation of rights letter" while reserving "our right to continue with an investigation into the facts and circumstances surrounding this matter and to make a determination as to our obligations under the policy." The letter also stated: "Should we determine that no potential for coverage exists under the policy, we reserve the right to withdraw from the investigation or the defense of this claim and to deny indemnification to any party for any settlement or judgment." The letter indicated that Scottsdale had already hired a law firm for the defense, Slaten & O'Connor.

On or about November 25, 2002, counsel for Bungee Racers and the Mosleys, notified Scottsdale and Slaten & O'Connor of their desire to exercise their right to independent counsel. Scottsdale refused. On or about December 5, 2002, counsel for Bungee Racers wrote Scottsdale repeated their request for independent counsel, providing a copy of *Moeller v. American Guar. &*

*Liab. Ins. Co.*, 707 So.2d 1062 (Miss. 1996). Bungee Racers argued that there is an inherent conflict of interest for a law firm hired by the insurer to represent the insureds in the Adventureland suit when the insurer has reserved its rights to deny coverage and withdraw defense. Scottsdale refused once again to provide independent counsel. Then sometime in January 2003, Scottsdale agreed to pay for Bungee Racers' independent counsel.

Some time in or around January 2003, Adventureland voluntarily dismissed their Alabama action against Bungee Racers. Shortly thereafter, Bungee Racers filed suit against Adventureland in the Circuit Court of Washington County, Mississippi. On March 14, 2003, Adventureland filed both a motion to dismiss Bungee Racers's suit and counterclaims against Bungee Racers. These counterclaims were identical to those alleged in the Alabama suit.

On August 15, 2003 Scottsdale, through an opinion letter written by the law firm of Page, Kruger & Holland in Jackson, Mississippi (counsel for Scottsdale in the instant action), denied coverage and defense to Adventureland's counterclaims even though they were identical to those Scottsdale initially agreed to defend in the Alabama action. The opinion letter characterizes Adventureland's counterclaims as "nothing more than a claim for breach of contract" and that "property damage" is only covered if it is an "occurrence" which is an accident, not defective workmanship. The letter also opines that the damages asked for by Adventureland are not "property damage" but rather economic damages which are not covered by the policy. Finally, the opinion letter wrote:

> Scottsdale is not estopped from denying coverage to Bungee Racers, Inc. because it had previously defended identical issues in the Alabama lawsuit. First and foremost, that prior defense was specifically provided under a reservation of rights. Scottsdale made no admission of coverage, but rather clearly questioned it and reserved its right to later deny coverage.

3

On December 10, 2004, over a year after opinion letter denying defense and coverage, Scottsdale filed the instant declaratory action against Bungee Racers, Inc., Doyle Mosley, Jimmy Mosley, and Adventureland, Inc. seeking a declaratory judgment that (1) the policy does not cover Adventureland's counterclaims; and (2) there is no duty to defend.

Meanwhile, on January 15, 2005 Adventureland files their Amended Answer and Counterclaims against Bungee Racers in the Circuit Court of Washington County essentially to add the claim of negligence. Adventureland urged that Bungee Racers' negligence caused "damages in the form of loss of their intended and expected use of the Bungee Racer ... loss or revenue, *diminution in the value of their property*, profits, ... losses of future profits, and the debt incurred in the purchase of the ride."(emphasis added).

On June 16, 2005, Bungee Racers filed their Answer and Counterclaim to the instant suit claiming that Scottsdale breached their insurance contract by denying defense and coverage. Bungee Racers seek a declaration "finding that Scottsdale owed and continues to owe a duty to defend the Scottsdale Insured against the claims of Adventureland as well as a duty to indemnify and/or cover the Scottsdale insureds against the claims stated in the Washington County suit." Bungee Racers also seek punitive damages "to the extent the conduct of Scottsdale is proven to rise to the level of bad faith."

Scottsdale filed their motion for summary judgment on January 25, 2006. Bungee Racers filed their motion for summary judgment on March 1, 2006.

Scottsdale argues in their motion that the subject policy simply does not cover Adventureland's counterclaims against Bungee Racer and therefore Scottsdale does not owe Bungee

4

Racers a duty to defend. This is because, according to Scottsdale, the counterclaims do not constitute "property damage" or an "occurrence" under the policy, and even if there were an "occurrence" there the "Damage to Your Product" and/or the "Damage to Your Work" exclusions apply to deny coverage.

In response and in their own motion for summary judgment, Bungee Racers argues that (1) Scottsdale breached its duty of defense and is estopped from withdrawing that defense since they began it during the Alabama case and are liable for damages arising therefrom; (2) Adventureland's counterclaims include damages to property *other* than Bungee's product and their negligence claim alleges damages in the form of "diminution of the value of their property," therefore there is at least partial coverage and therefore Scottsdale must defend and indemnify those claims; and (3) Scottsdale has committed bad faith in denying coverage and withdrawing defense and is therefore liable for attorney fees and punitive damages.

## II. DISCUSSION

### A. Summary Judgment

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 3l7, 323 (l986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250

(1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, *supra*, at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, *supra*, at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d 1026, 1031 (5 Cir. 1982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5 Cir. 1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5 Cir. 1969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, *supra*, at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party.

*Anderson*, *supra* at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*., at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*., at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

**B. The Policy**

Since this case hinges on the language of the general commercial liability policy at issue the court will now quote at length the relevant provisions:

> **Section I – Coverages**
> **Coverage A Bodily Injury and Property Damage Liability**
>
> **1. Insuring Agreement**
> We will pay those sums that the insured becomes legally obligated to pay as damages because of ... "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for ... "property damage" to which this insurance does not apply.
>
> \*\*\*
>
> This insurance applies to ... "property damage" only if:
>
> (1) The ... "property damage" is caused by an "occurrence" that takes place in the coverage territory; and
>
> (2) The ... "property damage" occurs during the policy period.
>
> \*\*\*
>
> **2 Exclusions**

This insurance does not apply to:

\*\*\*

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor

(Section 1 - A - 2(k) and (l))

\*\*\*

**Section V - Definitions**

\*\*\*

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

16. "Products-completed operations hazard":

a. Includes all ... "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

> (1) Products that are still in your physical possession; or
>
> (2) Work that has not yet been completed or abandoned.
>
> \*\*\*
>
> Work that may need service, maintenance, correction, repair

or replacement, but which is otherwise complete, will be treated as completed.

\*\*\*

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*\*\*

20. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed, or disposed of by:

(1) You

\*\*\*\*

21. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work" and

b. The providing of or failure to provide warnings or instructions.

### C. Interpretation Standards

"Generally, under Mississippi law, when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written." *Noxubee County School District,* 883 So.2d 1159, 1165 (Miss. 2004). Furthermore, "[a]ny ambiguities in an insurance contract must be construed against the insurer and in favor of the insured and a finding of coverage." *Nationwide Mutual Ins. Co. v. Garriga*, 636 So.2d 658, 662 (Miss. 1994).

An insurer's duty to defend "is broader than the insurer's duty to indemnify under its policy of insurance; the insurer has a duty to defend when there is any basis for potential liability under the policy." *Titan Indemnity Company v. Pope*, 876 SO.2d 1096, 1101 (Miss. 2004).

### D. Construction of the Policy

The first question is whether the amended Adventureland counterclaims involve "property damage" as that term is defined in the subject policy. As cited above, "property damage" includes "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured."

The court concludes that there is a reasonable basis to assume that Adventureland's counterclaims involve "property damage." In their claim for negligence, Adventureland seeks "damages in the form of loss of their intended and expected use of the Bungee Racer ... loss or revenue, *diminution in the value of their property*, profits, ... losses of future profits, and the debt incurred in the purchase of the ride." (emphasis added). In their other claims, they seek damages for "extensive financial losses including loss of the value of its purchase, additional construction costs,

lost revenue, increased labor hours for maintenance and operators, cost of financing the loan, repair bills, lost advertising expense, and *demolition expenses*." The claims for diminution in the value of their property and the demolition expenses both involve "physical injury to tangible property."

The next question is whether the "property damage" was an "occurrence" or "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Other than the fraud count, Adventureland does not allege that Bungee Racers intentionally damaged Adventureland's property by intentionally lowering the value of their amusement park site or by intentionally costing Adventureland expenses in demolishing the ride site after ride stopped working.

In *ACS Construction Company, Inc. of Mississippi v. CGU*, 332 F.3d 885, 888-9 (5th Cir. (Miss.) 2003), the Fifth Circuit Court of Appeals held that with regard to the term "occurrence" under Mississippi law, "the term accident refers to [the insured's] action and not whatever unintended damages flowed from that act." (citing *Allstate Ins. Co. v. Moulton*, 464 So.2d 507, 510 (Miss. 1985) as reaffirmed by *U.S. Fidelity & Guar. Co. v. Omnibank*, 812 So.2d 196 (Miss. 2002)). In *ACS Construction*, a case originating from this court, the construction company contracted to build munitions bunkers for the U.S. Air Force and subcontracted out installation of a waterproofing membrane in the roofs. When the membranes leaked, the subcontractor refused to repair. Thus, the construction company had to repair the damage, suffering a loss of about $190,000. The construction company then sought indemnification from their insurer for the loss incurred. The Fifth Circuit affirmed this court's conclusion that there was no "occurrence" and thus no coverage because the the construction company intended to hire the subcontractor to install the membrane even though it did not intend for the subcontractor to perform faulty work resulting in a leak. *Id*. at 889.

Bungee Racers cites *Lafarge Corp. v. Hartford Casualty Insurance Co.*, 61 F.3d 389, 395 (5th Cir. (Tex.) 1995) for the proposition that "there is an accident or occurrence when the alleged product defect has caused damage to other property." Bungee Racers argues that unlike the situation in *ACS Construction*, the property damage claimed in this case by Adventureland is damage to their own property, not damage to the allegedly defective ride itself.

The decision in *Lafarge* is inapplicable to this case because *ACS Construction* was decided on Mississippi law, whereas *Lafarge* was based on Texas law. The Mississippi Supreme Court has held that defining "accident" as it relates to the definition of "occurrence" requires answering the question "whether the insured intended the *underlying action*" and not "whether the insured intended the *consequences* of his actions." 332 F.3d at 888. Thus, "occurrence" equals "accident" and an "accident" under Mississippi law occurs when the insured did not intend the underlying action, as opposed to not intending the consequences of the underlying action.

The questions at hand, then, are what was the underlying action and did Bungee Racers intend it? The underlying action for which Bungee Racers seeks indemnity is Adventureland's counterclaims that Bungee Racers sold them a defective product. The alleged consequences of selling that defective product was financial and property damage. There is no evidence that Bungee Racers intended to sell a defective product. Therefore, the court concludes that there was an "occurrence" with regard to the subject policy.

The situation in this case is different from that in *ACS Construction* because no subcontractor is involved. It bears repeating that the Fifth Circuit concluded in *ACS Construction* that the "underlying action" was not the installation of the membrane that turned out to be faulty, causing

leaks. Rather, the underlying action was hiring the subcontractor to install the membrane, which the contractor did intend to do. As the Fifth Circuit put it: "Just as Moulton intended to file a complaint against Wall but may not have intended to cause him embarrassment, ACS intended to hire [the subcontractor] to install the membrane but did not intend for the work to be faulty or result in a leak." 332 F.3d at 889 (comparing the situation in *Moulton*, 464 So.2d 507 with that in *ACS Construction*).

Again, unlike the situation in *ACS Construction*, there is no subcontractor or other intervening event or person involved in this case. Rather, Bungee Racers may have intended to sell a product, but did not intend to sell a defective product to cause damage to Adventureland's property. It is the selling of a defective product that is the "underlying action" since, logically, but for the sale of an allegedly defective product there would be no counterclaims levied against the insured to defend and indemnify in the first place. If one were to conclude that just selling the product in general was the "underlying action," an insured would be hard-pressed to have his or her policy cover any event since businesses always intend to conduct their business which often includes selling products. Indeed, one of the primary reasons businesses purchase general commercial liability policies is to provide defense and coverage over the very type thing that is involved in this case.

Since there was an "occurrence," the next question is whether one of two exclusions apply. The "Damage to Your Product" exclusion states that coverage will not apply to "'[p]roperty damage' *to* 'your product' arising out of it or any part of it." (emphasis added). "Your product" is defined in this instance as the ride itself. As stated above, the "property damage" alleged by Adventureland in their counterclaims is not *to* the ride itself, which falls under the definition of "your [Bungee Racers'] product." Rather, the property damage is alleged to be the diminution of

Adventureland's property and demolition expenses. The "Damage to Your Work" exclusion states that coverage will not apply to "'property damage' *to* 'your work' arising out of it or any part of it *and* included in the 'products-completed operations hazard.'" This exclusion also does not apply in this instance since, regardless of whether any damage is included in the "products-completed operations hazard," there is no claim in Adventureland's counterclaims for damages *to* Bungee Racers' work but rather claims for damages to Adventureland's property.

Since the court has concluded the existence of coverage, Scottsdale's motion for summary judgment should be denied.

**E. Estoppel**

Bungee Racers argues that even if there were no coverage under the policy, Scottsdale is estopped from withdrawing their defense of Bungee Racers against Adventureland's counterclaims since Scottsdale already provided the defense earlier in the litigation and since Scottsdale initially refused to provide its insured with independent counsel to which they were entitled by *Moeller v. American Guarantee and Liability Insurance Company*, 707 So.2d 1062 (Miss.1998). Bungee Racers cites *Twin City Fire Insurance Company v. City of Madison, Mississippi*, 309 F.3d 901 (2002) for this proposition.

In *Twin City*, the Fifth Circuit ruled that:

When the alleged misconduct of the insurer concerns the duty to defend, the insurer may be liable despite an exclusion otherwise applicable. Upon withdrawal from the defense of the action, for example, an insurer may be estopped from denying liability under a policy, if its conduct results in prejudice to the insured. ... Even if the insurer would not have been liable had it not assumed the defense in the first instance, it may become liable for withdrawing, because the assumption of the defense may give rise to a duty to continue with the defense. ... Additionally, a breach of the duty to defend renders the insurer liable to the insured for all damages, including in a proper case

14

the amount of the judgment rendered against the insured.

*Id*. at 906 (citing *Southern Farm Bureau Cas. Ins. Co. v. Logan*, 119 So.2d 268, 272 (1960)). Furthermore, "[w]hen an insurer is defending under a reservation of rights, the carrier 'should afford the insured ample opportunity to select his own independent counsel to look after his interest." *Id*. at 907 (citing *Moeller*, 707 So.2d at 1070).

Bungee Racers argues that they were prejudiced per *Twin City* in two ways. First, they had to provide their own defense for the period after Scottsdale refused to defend after their August 15, 2003 opinion letter denying both coverage and the duty to defend against Adventureland's counterclaims in the case filed in the Circuit Court of Washington County, Mississippi. Second, since Scottsdale initially refused to provide independent *Moeller* counsel in their November 22, 2002 reservation of rights letter until around January 29, 2003, Bungee Racers was prejudiced by the conflict of interest created by the law firm hired by the insurer, Slaten & O'Connor. This is because Slaten & O'Connor was representing the insureds on the one hand and the insurer on the other hand, all while the insurer was reserving its rights to deny coverage depending upon the facts and circumstances of the case – facts and circumstances the insured was learning through the law firm they hired working for the insureds and the insurers.

The court agrees. Therefore, the court concludes that even if there were no coverage under the policy, Scottsdale would owe Bungee Racers the duty to defend given they had started to do so both in the Alabama and Mississippi cases, while doing so created and possibly profited from a conflict of interest given their refusal to provide independent *Moeller* counsel, and then withdrew that defense while the Mississippi case was and is still pending.

## F. Bungee Racers' Motion for Summary Judgment

There is a duty to defend against Adventureland's counterclaims since (1) there is coverage based on the plain language of the policy and (2) there is estoppel created by *Moeller* and *Twin City*. Thus, Bungee Racer's motion for summary judgment should be granted insofar as it seeks a declaration that Scottsdale has the duty to defend and indemnify Bungee Racers regarding Adventureland's counterclaims. Bungee Racers' counterclaim also seeks punitive damages and attorney fees for Scottsdale's alleged bad faith in their withdrawal of defense and eventual denial of coverage.

"In order to prevail in a bad faith claim against an insurer, the plaintiff must show that the insurer lacked an arguable or legitimate basis for denying the claim, or that the insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights." *Liberty Mutual Ins. Co. v. McKneely*, 862 So.2d 530, 533 (Miss. 2004).

The court concludes that Bungee Racers has not shown that the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there is a genuine issue of material fact that Scottsdale had no arguable basis for denying the claim or that they committed a wilful or malicious wrong or that they acted with gross and reckless disregard for the insured's rights.

## III. CONCLUSION

For the reasons discussed above, Scottsdale Insurance Company's Motion for Summary Judgment [30-1] is denied. Therefore, their claim for a declaratory judgment that they do not owe

their insured a duty to defend or coverage should be dismissed with prejudice.

Bungee Racers, Inc., Doyle Mosley, and Jimmy Mosley's Motion for Summary Judgment [34-1] should be granted insofar as the court concludes that there is coverage for Adventureland's amended counterclaims insofar as they seek damages for "property damage" in the form of demolition of property and diminution in the value of Adventureland's property (but not the ride itself or anything else that would fall under the "Your Work" or "Your Property" exclusions). The motion should also be granted insofar as Scottsdale owes a duty to defend since there is coverage based on the plain language of the policy and because of estoppel.

Bungee Racer's motion should be denied insofar as it seeks summary judgment in their favor on their claims for bad faith, punitive damages, and attorney fees. Because the court concludes that there is no genuine issue of material fact supporting bad faith or punitive damages, those counterclaims should be dismissed with prejudice.

Therefore, nothing remains in the instant case for adjudication and it should therefore be closed.

Accordingly, an Order shall issue forthwith,

**THIS DAY** of August 14, 2006.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE